UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
EILEEN DECHBERRY,

                    Plaintiff,              **MEMORANDUM AND ORDER**

     -against-
                                   14-CV-2130 (KAM)(SMG)
NEW YORK CITY FIRE DEPARTMENT,

                    Defendant.
----------------------------------------x
**MATSUMOTO, United States District Judge:**

        Plaintiff Eileen Dechberry ("plaintiff") commenced

this action, *pro se*, on April 2, 2014, against defendant, the

New York City Fire Department ("FDNY" or "defendant") pursuant

to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e, *et seq.*, the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the New York City

Human Rights Law  Plaintiff alleges employment discrimination on

the basis of gender and disability, and that her employment was

terminated without due process.  Specifically, plaintiff alleges

that she was suffered discrimination, retaliation, and a hostile

work environment due to her gender and disability.  (ECF No. 1,

Complaint ("Compl.") ¶¶ 4-7.)

        Pending before this court is defendant's unopposed

motion to dismiss for failure to state a claim pursuant to

Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1]  For the

reasons set forth herein, the court grants defendant FDNY's

motion to dismiss the Complaint.

**<u>BACKGROUND</u>**

**I.   Documents Considered**

The following facts are drawn primarily from the

plaintiff's Complaint, which the court must assume to be true

for the purpose of considering defendants' Motion to Dismiss

pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6).

(*See generally* Compl.)  Additionally, where indicated, the

Complaint's factual allegations are supplemented by facts and

information drawn from documents external to the Complaint,

which plaintiff explicitly relies upon in her Complaint or that

are within the purview of judicial notice.  These external

documents have been provided to the court as attachments the

Complaint and to the defendants' motion to dismiss.  (ECF No. 1,

Complaint; 23, Defendant's Motion to Dismiss, Defendant's

Memorandum of Law in Support of its Motion to Dismiss ("Def.

Mem."), and Declaration of David Mou in Support of Defendant's

Motion to Dismiss ("Mou Decl.").)

---

[1] As set forth, *infra*, at pp. 13-14, plaintiff was aware that she was required
to file an opposition to defendant's motion to dismiss and failure to do so
would result in the court deeming defendant's motion unopposed.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the Complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Pesserillo v. Nat'l Grid*, No. CV 14-3800, 2015 WL 136030, at *3 (E.D.N.Y. Jan. 8, 2015) (quoting *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004)) (deeming prior Agreement and General Release entered into by plaintiff to be incorporated into the complaint by reference, particularly because it was "integral to [plaintiff's] ability to pursue his cause of action").

Moreover, "affirmative defenses, including the enforcement of a general release, are properly considered by a court as part of a motion to dismiss under Rule 12(b)(6)." *WSP USA Corp. v. Marinello*, No. 13-CV-4591, 2013 WL 6704885, at *3 (S.D.N.Y. Dec. 19, 2013) (citing *Tromp v. City of New York,* 465 F. App'x 50, 51-52 (2d Cir. 2012)) (dismissing claims pre-dating the general release). Furthermore, "matters judicially noticed by the District Court are not considered matters outside the pleadings." *Gilbert v. N. Am. Airlines*, No. 12-CV-523, 2014 WL 1271057, at *1 (E.D.N.Y. Mar. 26, 2014) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 426 (2d Cir.

2008)). A "court may take judicial notice of a document filed in another court – not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998); *see Staehr*, 547 F.3d at 426 ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents."); *Reisner v. Stoller,* 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) ("The court may . . . take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties."). A district court may also "take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106, 119 (E.D.N.Y. 2013) (citing *Harris v. New York State Department of Health,* 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002)).

## II.  Factual Background

Plaintiff was a former Emergency Medical Technician ("EMT") with the Emergency Medical Services ("EMS") of the FDNY

from March 10, 2006 until September 3, 2013, with an "exemplary performance" and "tardiness" record.  (Compl. at 11.)[2]

Plaintiff alleges that, beginning in 2011, the FDNY "intentionally and willfully discriminated against [her] in [her] employment based upon [her] gender, created a hostile working environment and retaliated against [her] because [she] engaged in a protected activity of complaining to the EEO [*sic*]" and filing her 2011 lawsuit.  Plaintiff also claims disability discrimination.  (Compl. at 7, 15.)  Plaintiff alleges that she made "numerous complaints, both to her supervisors as well as the internal office of the Equal Employment Opportunity" within the FDNY, regarding "disrespectful treatment, retaliation and harassment which has created . . . a hostile work environment." (Compl. at 11.)  Plaintiff claims that "[t]he conduct of her immediate supervisors, Lt. Lori Mazzeo and Lt. Irene Kruten . . . is severe and pervasive, creating a hostile work environment that a reasonable person would consider intimidating, abusive and hostile."  (Compl. at 11.)  She also contends that "[e]ven though [defendants] were aware of [her] complaints and the existence of a hostile work environment, no actions were taken . . . in an effort to correct the discriminatory conduct." (Compl. at 15.)  Plaintiff cites the following events in support of her claims.

---

[2] The court's citations to plaintiff's Complaint and EEOC charge reference the page numbers automatically generated by the court's electronic filing system.

## A. Allegations Pre-Dating the General Release

On or about March 7, 2011, plaintiff returned to work and was informed she would need to be cleared by a doctor to be re-certified for CPR, a requirement of her EMT position at the FDNY. (Compl. at 11.) Plaintiff asserts that she was required to undergo rigorous testing for six hours to obtain her recertification, and that she complained to her supervisor, Lieutenant Chan, regarding the "abnormally rigorous" testing and plaintiff's physical impairments. (*Id.*) Lieutenant Chan instructed plaintiff to obtain a medical diagnosis and doctor's note. Plaintiff was subsequently treated by a physician and diagnosed with "upper extremity pain tendonitis, requiring rest, icing, and anti-inflammatory medication." (Compl. at 11.)

Despite having provided a doctor's note, plaintiff was required to perform the CPR test again the following day. Although she complained of "jolting pains" in her shoulders, wrists and arms, plaintiff was instructed that she would "have to finish the procedure or else will not be able to return to work" and would "have to keep coming back until [she] pass[ed]." (Compl. at 12.) Plaintiff alleges that as a result of this "rigorous testing," she could not feel her fingers or palm, could not move her shoulders, and had no sensation in her right hand, while her left hand was "completely black and blue." (*Id.*)

Plaintiff alleges that she was hospitalized the
following morning and notified her union representative about
the events and her injuries.  (Compl. at 12.)  She was diagnosed
with severe tendonitis, injuries to her left arm, and severe
swelling, requiring a cast up to her shoulder on her left hand.
(Compl. at 17.)   Moreover, while she was waiting to fill out
Line of Duty Injury ("LODI") papers, plaintiff alleges that she
overheard an employee "yell[ ] to Chief Swithers" that plaintiff
is "small, she can't do it [CPR]"  (Compl. at 17 (correction in
original).)   Plaintiff further alleges that she was "rushed to
the emergency room" a few nights later.  (*Id.*)

Plaintiff alleges that she was ultimately denied LODI
status by her superior, Chief Swithers, "for no legitimate
reason, despite [her] serious and overt hand injuries."  (Compl.
at 14.)  She indicates that she continued her efforts to be
approved for LODI, and was ultimately told by a compensation
representative that she was "not eligible for LODI because of a
minor technical error namely because the LODI package that the
academy filled out stated that the injury occurred on March 3rd,
whereas the date of injury on the witnesses' statements and
[plaintiff's] statement was March 2nd."  (Compl. at 17.)
Although she appealed to Chief Swithers that this was only a
"technical error that could have been quickly and easily fixed,"
Chief Swithers "refused to allow LODI benefits and denied

surgery." (*Id*.) Plaintiff alleges that "[t]he significant increase in severity of [her] injury would not have occurred but for Chief Swither's decision to deny the LODI benefits and deny and delay my surgery." (*Id*.) Moreover, plaintiff had an "MRI for which she was forced to pay out of pocket as [her] LODI had still not been approved." (*Id*.)

On or about October 12, 2011, plaintiff complained to the FDNY EEO[3] about Captain Knight's discrimination and harassment. (Compl. at 16.) Plaintiff alleges that Captain Knight instructed a coworker not to assist plaintiff, who was sick in the locker rooms, however, plaintiff fails to provide a timeframe for this event. (*Id*.) Plaintiff alleges that at this time, she had requested assistance from a coworker to help her to the bathroom, but that Captain Knight interfered, instructing the coworker not to assist plaintiff, as plaintiff was "refusing patient care, all of which was false." (*Id.*) Captain Knight allegedly followed plaintiff into the bathroom and stood outside the stall "harassing [plaintiff]." (*Id*.) Plaintiff was ultimately taken into an ambulance due to a "hypertensive crisis," and alleges that "while coworkers were helping [her] get inside the ambulance, Knight came into the ambulance with [her] and harassed [her] even more, to the point where coworker

_____

[3] Plaintiff references complaints that she made to the "EEO," which the court understands is the Equal Employment Opportunity Office of the FDNY, and not the Equal Employment Opportunity Commission of the United States.

[*sic*] had to tell Knight to get off the ambulance as she was interfering with patient care." (*Id.*)

On November 16, 2011, plaintiff complained to the FDNY EEO that her schedule had not been accommodated when Captain Knight refused to alter her work shift. (Compl. at 16.) Plaintiff alleges that "she was forced to continue working from 8:00 a.m. until 4:00 p.m., causing [her] to miss many work days and time due to [her] medical appointments." (*Id.*) Plaintiff alleges that "due to Knight's denial of accommodation for [her], [her] relationship with [her] friend/coworker Tanya Agostino deteriorated" when Ms. Agostino began fighting with plaintiff who had complained that Ms. Agostino's shift change had been granted, thereby resulting in an "even more hostile work environment." (Compl. at 13.) Plaintiff indicates that "for an entire week [she] was subject to hostility at work." (*Id.*)

Plaintiff contends that the fact that on or about December 7, 2011, Captain Knight granted her coworker Tanya Agostino's request for a shift change to 7:00 a.m. to 3:00 p.m. "shows that such accommodations were easily available, yet [plaintiff] was singled out when [plaintiff] was denied the accommodation." (Compl. at 13, 16.) On or about December 8, 2011, plaintiff notified her union representative, John Roddy, about the "disparate treatment." (Compl. at 16.) When plaintiff and Mr. Roddy questioned Captain Knight regarding her

denial of plaintiff's request, Captain Knight responded that
"'she is the Captain' and can therefore grant/deny any request
at her discretion." (*Id.*)  On or about December 9, 2011,
plaintiff was also granted a shift change to 7:00 a.m. to 3:00
p.m.  (Compl. at 13.)

On or about December 27, 2011, plaintiff suffered an
injury from an accident that occurred in the FDNY "training
room" or "lounge."  (Compl. at 13.)  On or about December 28,
2011, plaintiff was told that she was denied LODI benefits.
(*Id.*)  She alleges that she was denied a "LODI package" and
worker's compensation because the injury occurred in a "lounge,"
and that the "paperwork that FDNY personnel filled out
erroneously contained the word 'lounge,' barr[ing] [her] from
recovery of worker's compensation."  (*Id.*)

On or about June 19, 2012, plaintiff complained to the
FDNY EEO regarding her Captain's discrimination and Samuel's
abandonment at her accident in December 2011.  (Compl. at 14.)
Specifically, plaintiff claims that Samuel "intentionally
abandoned [her] at the scene of the accident and retaliated as
such by not assisting [her]" when she fell.  (Compl. at 16.)

### B.  Events Post-Dating the General Release

Plaintiff alleges that she has suffered "even more
hostility and retaliation" since her July 2012 settlement.
(Compl. at 11.)  Plaintiff contends that she was not granted

LODI benefits until the day prior to her surgery in January 2013. (Compl. at 14.) Plaintiff asserts that the "repeated denial of such necessary accommodation for over a year caused [her] hand injuries to become more and more severe, as surgeries would not have been required had [she] been granted LODI status." (Compl. at 14, 17.) Plaintiff further alleges that the "denial of LODI status was part of an ongoing retaliation by [FDNY] stemming from her 2011 lawsuit." (Compl. at 14.) On March 20, 2013, plaintiff underwent a second surgery. (Compl. at 14.) She indicates that her medical records "reveal that [she is] totally disabled, cannot drive and cannot take public transportation." (*Id.*)

Plaintiff claims that, despite two surgeries within approximately two months, the FDNY required her to see their doctors at the Bureau of Health Services ("BHS") in Brooklyn, New York, (*Id.*), and that she was "constantly harassed by FDNY Bureau of Health Services." (*Id.*) Specifically, plaintiff claims that "on multiple times, [she] pleaded to have [her] appearance at FDNY Bureau of Health Service adjourned from April 24 and April 26," due to her inability to obtain transportation and appear at the hearing. (Compl. at 15.) Plaintiff also alleges that she "had called Lt. Guzman 6 times on April 26, 2013 to inform him of [her] inability to appear at the Bureau of Health Services on that date." (*Id.*) The FDNY, however, denied

her requests for an adjournment, terminated her LODI status, and issued a "Violation Letter" the following day, based on her failure to appear before the BHS. (*Id.*) In addition, plaintiff claims that the FDNY also removed her from the payroll, and that "Lt. Guzman recommended termination of [her] LODI status" and "threatened to discipline [her] based on his false allegation of [her] being rude and profane while making requests for adjournment of [her] medical appearance." (*Id.*)

## III. Procedural History

### A. The Instant Action

Plaintiff filed her *pro se* Complaint in this action on April 2, 2014. (ECF No. 1, Complaint.) On August 5, 2014, the parties appeared before the court on a telephonic pre-motion conference to discuss and establish a briefing schedule for defendant's proposed motion to dismiss. (Minute Entry, dated Aug. 5, 2014.) On September 4, 2014, the court adjourned the briefing schedule pending plaintiff's motion to reopen her 2011 lawsuit before Judge Weinstein and vacate the settlement. (Order, dated Sept. 4, 2014.) On September 22, 2014, the defendant provided the court with a joint status update, indicating that Judge Weinstein had denied plaintiff's application to reopen her case and set aside the settlement, finding that there was no basis to do so established at the evidentiary hearing. (ECF. No 19, Status Report, dated Sept.

22, 2014.)  The briefing schedule was adjourned again pending
plaintiff's motion for reconsideration before Judge Weinstein.
On October 23, 2014, the defendant again provided a status
report to the court advising that Judge Weinstein had denied
plaintiff's motion to reconsider, and proposing a revised
briefing schedule, which the court so-ordered on October 27,
2014.  (ECF No. 21, Status Report, dated Oct. 23, 2014; Order
dated Oct. 27, 2014.)  A copy of the court's order was served
upon plaintiff at her address on record the same day.

On January 20, 2015, defendant filed its motion to
dismiss, indicating that defendant had not received any
opposition from plaintiff, or any indication of intent to serve
an opposition by the court-ordered date.  (ECF No. 24,
Defendant's Letter dated Jan. 20, 2015.)  Upon order by the
court, plaintiff provided a status update requesting an
extension of time to respond to defendant's motion to dismiss
because she intended to obtain legal representation.  (ECF No.
26, Plaintiff's Letter dated March 20, 2015.)  The court granted
plaintiff's an extension for her opposition to defendant's
motion and ordered plaintiff to file a status update by April
30, 2015.  Because plaintiff failed to provide a status update
by April 30, 2015, the court ordered plaintiff to serve a
response to defendant's motion to dismiss by May 29, 2015, and
warned plaintiff that failure to do so would result in the

forfeiture of her opportunity to respond to defendant's motion.
(Order dated May 5, 2015.)  On June 1, 2015, the court deemed
defendant's motion unopposed and fully briefed, due to
plaintiff's failure to respond.  (Order dated June 1, 2015.)

**B.    Plaintiff's Prior Lawsuit and Settlement Agreement**

On June 8, 2011, plaintiff, represented by counsel,
commenced an action against the City of New York, Lt. Irene
Kruitken, Lt. Lori Mazzeo, Lt. "John" Cameron, and Lt. "John"
Samuels. *Dechberry v. City of New York*, 11-CV-2767 (E.D.N.Y.,
June 8, 2011) ("prior federal action").  The matter was settled
through mediation, and a Settlement Agreement was executed on
July 13, 2012 followed by a General Release of all claims,
executed on July 18, 2012.  (Mou Decl. Exs. 3-4.)  A stipulation
of dismissal with prejudice was ordered by the Honorable Jack B.
Weinstein on July 18, 2012, thereby closing the case.   (Mou
Decl. Ex. 5.)

On August 24, 2014, the court received a letter from
plaintiff indicating that her attorney, Linda M. Cronin, had
"settled the case without [her] knowledge," "forged [her] name
if there is a signature," and that she had not signed "anything
releasing [her] case out of federal court."  (Mou Decl. Ex. 6.,
Letter from plaintiff to Judge Weinstein, dated August 24, 2014
at 1.)  Plaintiff also claimed that Ms. Cronin had "filed an
EEOC without [her] knowledge or permission."  (*Id.* at 2.)  Judge

Weinstein held an evidentiary hearing on September 8, 2013

regarding plaintiff's request to reopen the case and vacate the

settlement.  (Status Report, dated Sept. 22, 2014, at 1.)  On

September 16, 2014, Judge Weinstein denied plaintiff's

application, finding that "there was no basis to reopen the case

or set aside the settlement."  (Mou Decl. Ex. 7, Order dated

Sept. 11, 2014.)  Judge Weinstein denied plaintiff's motion for

reconsideration on September 23, 2014, finding that "[n]o

adequate reason to reconsider has been provided."  (Mou Decl.

Ex. 8, Order dated Sept. 23, 2014.)  Plaintiff has not, as of

this date, filed an appeal.

### C.    Plaintiff's Charges to the Equal Employment Opportunity Commission (EEOC)

Plaintiff attaches to her complaint a charge of

discrimination with the Equal Employment Opportunity Commission

("EEOC"), which was dated and signed by plaintiff on June 11,

2013 and received by the EEOC on June 17, 2013.[4]  (Compl. at 9.)

The EEOC charge alleges that the New York City Fire Department

---

[4] Plaintiff disputes that she filed this June 2013 EEOC charge, and contends
that her former counsel, Ms. Cronin, "filed this charge without [her]
knowledge or consent" and that plaintiff only learned about it "when [she]
was mailed the right to sue letter from EEOC [*sic*] in January 2014."  (Mou
Decl. Ex. 5, Plaintiff's Letter dated July 27, 2014.)  Defendant argues that,
even accepting plaintiff's assertions as true, her claims must be dismissed
for failure to comply with the requirement that a Charge of Discrimination be
filed with the EEOC before an action may be commenced in federal court.
(Def. Mem. at 8.)  Plaintiff, however, contradicts her position by relying on
the statements in the June 17, 2013 EEOC charge attached to her complaint,
and therefore the court will not reach a finding as to whether or not the
EEOC charge was filed with or without plaintiff's consent and/or knowledge or
whether plaintiff complied with the administrative claim exhaustion
requirements.

discriminated against plaintiff on account of gender, retaliated
against her, and created a hostile working environment during
the course of plaintiff's employment as an Emergency Medical
Service Technician from 2006 through 2013. (Compl. at 6.)
Plaintiff's allegations contained in the EEOC charge are
described in full in the factual background discussed *supra.*

On January 8, 2014, the EEOC dismissed plaintiff's
complaint and issued a right to sue letter. (Compl. at 6-7.)
Specifically, the EEOC found that based on its investigation and
evaluation of the material documents and records received, the
Commission could not conclude that plaintiff was subject to any
adverse employment action motivated by discriminatory animus.
(*Id.*)

### D.  Plaintiff's Pending State Court Action

On February 19, 2014, plaintiff, represented by
counsel, filed an Article 78 Petition in New York State Supreme
Court, County of New York ("Article 78 action"), challenging the
FDNY and City of New York's September 3, 2013 Action and
Determination pursuant to New York Civil Service Law ("CSL")
§ 71, which effectively terminated plaintiff's employment with
the FDNY.[5]  (Mou Decl. Ex. 9.)  In her Article 78 action,

---

[5] Civil Service Law § 71 governs the reinstatement of employment after
separation for disability and provides that an employer may "medically
separate an employee," when that employee's leave of absence exceeds on year.
C.S.L. § 71.

plaintiff seeks an Order and Judgment setting aside the September 3, 2013 Action and Determination, on the basis that the FDNY and City "failed to perform a duty enjoined upon it by law," and that their "determination was made in violation of lawful procedure." (Mou Decl. Ex. 9, Art. 78 Pet. ¶ 3.) Specifically, plaintiff alleges that the City and FDNY failed to provide proper notice of their determination of termination by sending the notice of termination to an invalid and outdated mailing address, instead of the address known to the FDNY. (*Id.* ¶¶ 30, 34.) In a status letter dated August 12, 2015, the defendant advised the court that plaintiff's Article 78 proceeding remains pending in New York State Supreme Court, and that oral argument regarding the defendant's motion to dismiss is scheduled for September 10, 2015. (ECF No. 30, Defendant's Letter dated August 12, 2015.)

## DISCUSSION

Defendant moves to dismiss the Complaint on the following grounds: (1) plaintiff's claims that occurred prior to July 13, 2012 are barred by plaintiff's Settlement Agreement and General Release executed on July 13, 2012 in her prior action before Judge Weinstein; (2) plaintiff's due process claim should be dismissed on abstention grounds because plaintiff has initiated a parallel proceeding in New York State Court, or alternatively, because plaintiff has an adequate state remedy

for her due process claim in the form of an Article 78
proceeding; (3) plaintiff's claims which occurred prior to
August 21, 2012 are barred by the 300 day statute of limitations
imposed by Title VII and the ADA; (4) accepting as true
plaintiff's claim that she did not file an EEOC charge,
plaintiff has failed to meet the mandatory condition precedent
of filing an EEOC charge before bringing a Title VII or ADA
cause of action in federal court; and (5) plaintiff fails to
state a claim upon which relief may be granted. (Def. Mem. at
2.)

## I.   Claims Accrued Prior to July 13, 2012 Are Barred by
Plaintiff's Settlement Agreement and General Release in the
Prior Federal Action

### A.   Legal Standard

"It is well established that settlement agreements are
contracts and must therefore be construed according to general
principles of contract law." *Tromp*, 465 F. App'x at 51
(quoting *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir.
2002)). "Where the language of [a] release is clear, effect
must be given to the intent of the parties as indicated by the
language employed." *Id*. (quoting *Shklovskiy v. Khan,* 273
A.D.2d 371, 709 N.Y.S.2d 208, 209 (2d Dep't 2000)) (internal
quotations omitted). "Under New York law, a release that is
clear and unambiguous on its face and which is knowingly and
voluntarily entered into will be enforced." *Pampillonia v. RJR*

*Nabisco, Inc.,* 138 F.3d 459, 463 (2d Cir. 1998) (affirming

dismissal where release that was unambiguous, and was knowingly

and voluntarily entered into, barred plaintiff from bringing

action).

Courts in this Circuit have consistently barred claims

where a plaintiff enters into a settlement, executes a general

release, and then brings an additional lawsuit alleging similar

claims that could have been alleged in the prior settled action.

*See Tromp*, 465 F. App'x at 52 (affirming dismissal of claims as

barred by general release where claims could have been alleged

in prior action); *Castro v. City of New York*, No. 11-CV-5379,

2012 WL 5289490, at *3 (E.D.N.Y. June 26, 2012) *report and

recommendation adopted*, 2012 WL 5289517 (E.D.N.Y. Oct. 22, 2012)

(dismissing claims as barred by a general release where

plaintiff had ample opportunity to include later claims in prior

action, as events that formed basis of later claims occurred

several months before settlement was reached); *Lewis v. City of

New York,* No. 10-CV-3266, 2011 WL 3273939, at *2 (E.D.N.Y. July

29, 2011).

Indeed, "[w]ords of general release are clearly

operative not only as to all controversies and causes of action

between the releasor and releasees which had, by that time,

actually ripened into litigation, but to all such issues which

might then have been adjudicated as a result of pre-existent

controversies." *Tromp*, 465 F. App'x at 52 (citing *A.A. Truck Renting Corp. v. Navistar, Inc.,* 81 A.D.3d 674 (2d Dep't 2011)) (citations omitted). Thus, "when general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Castro*, 2012 WL 5289490, at *3 (citing *Tromp,* 465 F. App'x at 52 (internal citations omitted)).

**B. Application**

Defendant argues that plaintiff's claims which accrued prior to July 13, 2012 must be dismissed as barred by the prior federal action, specifically plaintiff's Settlement Agreement and General Release, dated July 13, 2012, and by Judge Weinstein's "so ordered Stipulation of Dismissal, dated July 18, 2013, which are attached to the Declaration of David Mou as Exhibits 2 and 4. (Declaration of David Mou in Support of Defendant's Motion to Dismiss ("Mou Decl.") Exs. 2, 4.)

On June 8, 2011, plaintiff filed an action assigned to Judge Jack B. Weinstein in this district against the City of New York and other individuals at the FDNY for discrimination on the basis of gender, retaliation, harassment, and a hostile work environment arising out of her employment at the FDNY. Plaintiff's claims were subsequently dismissed with prejudice on July 18, 2012, upon the execution of a Stipulation of Dismissal based on the parties' settlement in the amount of $32,000.00. In return for the settlement payment, plaintiff executed a

Settlement Agreement, signed by plaintiff's former counsel, Ms.

Cronin, on July 13, 2012, and a General Release, signed by

plaintiff and notarized on the same date.

The General Release provides that:

> Eileen Dechberry (the "RELEASOR"), in
> consideration of the subsequent payment . .
> . does for herself . . . release and forever
> discharge the City of New York, the Fire
> Department of the City of New York, and all
> other departments, officials, employees,
> representative and agents of the City of New
> York, past and present . . . of and from all
> manner of action and actions, cause and
> causes of action, suits . . . claims and
> demands, in law or in equity, which against
> the RELEASEES, the RELEASOR . . . ever had,
> now have or hereafter can, shall or may have
> for, upon or by reason of any matter, cause
> or thing whatsoever from the beginning of
> the world to the day of the date of this
> GENERAL RELEASE, including but not limited
> to the acts or omissions complained of in
> this ACTION.[6]

(Mou Decl. Ex. 3.) The Settlement Agreement provides

substantially identical terms. (Mou Decl. Ex. 2.)

The language of the General Release and Settlement

Agreement is plain and unambiguous, as well as broad in scope.

The General Release bars plaintiff from bringing any future

claims or causes of action against the City of New York and the

FDNY that plaintiff as "Releasor" "ever had, now have or

hereafter can, shall or may have" "from the beginning of the

---

[6] The Settlement Agreement and General Release exclude any state law tort
claims concerning an alleged trip and fall incident that plaintiff suffered
on December 27, 2011. These state tort claims are not alleged in the federal
action before this court.

world to the day of the date of this GENERAL RELEASE." (Mou Decl. Ex. 3.) This release includes claims arising out of separate, "pre-existent" events that could have been, but were not, raised in the prior action.

In the instant action, plaintiff brings claims that arise from events which occurred prior to the General Release and Settlement Agreement and could have been raised in the prior federal action before Judge Weinstein. Indeed, many of the events that transpired in this action upon which plaintiff bases her claims, occurred prior to the filing of the first action in 2011. As provided by the agreements, and consistent with Second Circuit caselaw, plaintiff's claims need not have *actually* been alleged in the prior action. (Mou Decl. Exs. 2-3 (barring claims that plaintiff "ever had, now have or hereafter can, shall or may have" "from the beginning of the world to the day of the date of this GENERAL RELEASE.") In *Tromp*, the Second Circuit affirmed the dismissal of claims against the City of New York as barred by a General Release which released the City from "any and all claims which were or could have been alleged by [plaintiff] in the aforementioned action," despite the fact that the claims were not *actually* alleged in the settled action. *Tromp*, 465 F. App'x at 52. The court reasoned that, although the second "incident involved a different arrest, it was similar in nature to the arrest that was the subject of [the prior

settled action]," thus, because the allegations "could have been alleged," they were barred by the General Release. *Id*. Here, plaintiff's claims in the instant action are not only similar in nature to the gender discrimination, harassment, hostile work environment, and retaliation claims in the prior settled action, but also could have been alleged. Accordingly, plaintiff's claims pre-dating July 13, 2012 must be and are dismissed as barred by the Settlement Agreement and General Release in the prior federal action before Judge Weinstein.

Finally, although plaintiff now alleges that "the settlement in July 2012 . . . was cohorst [*sic*]," (Compl. ¶ 8), and that she "never signed a settlement or release," the court finds no grounds to deem the Settlement Agreement or General Release invalid as coerced, or otherwise improperly obtained as plaintiff asserts. (*See* ECF No. 12, Plaintiff's Letter dated July 27, 2014.) Indeed, plaintiff appeared before Judge Weinstein on her application to re-open her case before him and set aside the settlement, asserting as she does again here, that she had not agreed to the terms of the settlement nor did she sign the Settlement Agreement or General Release. Following an evidentiary hearing on the issue of whether plaintiff knowingly and voluntarily entered into the Settlement Agreement and Release, Judge Weinstein found that there was "no basis to reopen the case or to set aside the settlement." (Mou Decl. Ex.

7, *Dechberry v. City of New York,* No. 11-CV-2767, Order dated Sept. 11, 2014.) Judge Weinstein subsequently found no adequate reason to reconsider plaintiff's application. (Mou Decl. Ex. 9, *Dechberry v. City of New York,* No. 11-CV-2767, Order Denying Reconsideration.) The court has no basis to disturb Judge Weinstein's rulings.

Accordingly, plaintiff's claims that arise from events pre-dating the execution of the Settlement Agreement and General Release – July 13, 2012 – and that could have been brought in the first action are barred and are hereby dismissed.

## II. Claims That Accrued Prior to August 21, 2012 are Time Barred by Statute of Limitations

### A. Legal Standard

A plaintiff who wishes to pursue a federal employment discrimination suit under either Title VII or the ADA must file a charge with the EEOC within 300 days of the alleged unlawful employment practice or challenged discriminatory act. 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA) (applying the powers, remedies and procedures set forth under Title VII to charges of discrimination brought under the ADA); *see also Cherry v. City of New York*, 381 F. App'x 57, 58 (2d Cir. 2010) (affirming dismissal of Title VII and ADA claims as untimely where plaintiff failed to file EEOC charge within 300 days of discriminatory conduct); *Edwards v. Elmhurst Hosp. Ctr.,*

No. 11-CV-5348, 2013 WL 839554, at *3 (E.D.N.Y. Feb. 4, 2013)

*report and recommendation adopted*, 2013 WL 831162 (E.D.N.Y. Mar.

6, 2013) (dismissing claims under Title VII and the ADA as time-

barred due to plaintiff's failure to file his EEOC charge within

300 days of the alleged acts of discrimination).  A charge

alleging a hostile work environment claim, however, will not be

time-barred so long as all acts which constitute the claim are

part of the same unlawful employment practice and at least one

act falls within the time period.  *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 122 (2002); *McGullam v. Cedar Graphics,*

*Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing *Morgan*, 536 U.S. at

105) ("[C]onsideration of the entire scope of a hostile work

environment claim, including behavior alleged outside the

statutory time period, is permissible for the purposes of

assessing liability, so long as an act contributing to that

hostile environment takes place within the statutory time

period.").

        Although plaintiff is *pro se,* and thus entitled to a

more lenient construction of her claims by the court, a motion

to dismiss must be granted for any claims based on allegedly

discriminatory acts or events occurring prior to 300 days from

the filing of a charge of discrimination with the EEOC.  *Cherry*,

381 F. App'x at 58; *Edwards v. Elmhurst Hosp. Ctr.*, 2013 WL

839554, at *4 *report and recommendation adopted*, 2013 WL 831162
(E.D.N.Y. Mar. 6, 2013).

**B.   Application**

The EEOC received plaintiff's EEOC Charge of
Discrimination on June 17, 2013.  (Compl. at 9.)  Accordingly,
plaintiff's claims with respect to retaliation, harassment,
retaliation, and disparate treatment which rely on discrete
events that occurred prior to August 21, 2012, or 300 days prior
to June 17, 2013, are dismissed as untimely.

With respect to plaintiff's hostile work environment
claims, although such claims are not time-barred if "at least
one act falls within the time period," *Morgan*, 536 U.S. at 122,
plaintiff fails to set forth any allegations of a hostile work
environment post-dating August 21, 2012.  Indeed, the only
specific facts alleged with respect to plaintiff's hostile work
environment claim stem from events that occurred prior to August
21, 2012, namely the disparate treatment with regard to
plaintiff's request for a shift change.  (Compl. at 13.)

Moreover, as discussed further in Section III.E.,
although plaintiff alleges that she has suffered "even more
hostility and retaliation" since her July 2012 settlement and
that "[t]he conduct of [her] immediate supervisors . . . is
severe and pervasive, creating a hostile work environment,"
plaintiff does no more than make conclusory allegations.

26

Without allegations of specific conduct, the court is unable to determine whether any of defendant's alleged violations based on hostile work environment occurred after August 21, 2012. *See Buckley v. New York*, 959 F. Supp. 2d 282, 300 (E.D.N.Y. 2013) (dismissing hostile work environment claims because plaintiff failed to make specific allegations or examples of hostile work environment actions and only plead conclusory allegations).

Accordingly, the court dismisses all of plaintiff's Title VII and ADA claims that rely on discrete conduct or events that occurred prior to August 21, 2012.

## III. Plaintiff's Remaining Claims

Plaintiff's remaining claims largely pertain to plaintiff's allegations regarding the delay in awarding her LODI status and benefits, the termination of her LODI status and benefits in 2013, and her termination of employment in 2013, which plaintiff alleges were due to discrimination and retaliation on the basis of her gender and disability.[7] Plaintiff also alleges defendants engaged in a pattern of conduct that created a hostile work environment. Finally,

---

[7] With respect to LODI benefits, plaintiff also alleges that she was denied LODI status and benefits on two occasions – March 2011 and December 2011, based on technicalities or improper paperwork, which she alleges was done in retaliation of her 2011 lawsuit and various complaints to the EEOC and EEO. Because these denials occurred prior to the July 13, 2012 General Release and August 21, 2012 statute of limitations date, claims premised on these events are time-barred or barred by the release in the prior federal action.

plaintiff claims in her Complaint that she was "terminat[ed] without due process."[8]  (Compl. ¶ 4.)

Defendant moves to dismiss the remaining claims on two grounds.  First, defendants assert that the Complaint fails to state a cognizable claim with respect to the discrimination, retaliation, and hostile work environment claims under Title VII and the ADA.  Moreover, defendants argue that the district court should abstain from making a determination on plaintiff's due process claim because plaintiff has commenced a pending Article 78 proceeding in New York State Supreme Court that raises substantially the same claims, and that the Article 78 proceeding provides an adequate remedy at law.  For the reasons set forth below, plaintiff's remaining claims that post-date the General Release and that are not time barred are dismissed.

### A.    Legal Standard for Motion to Dismiss

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  As a general rule, the court is required to accept as true all of the allegations contained in the complaint.  *See Iqbal,* 556 U.S. at 678; *Kassner*

---

[8] Plaintiff alleges in her EEOC charge that FDNY removed her from payroll in April 2013, but fails to indicate in the EEOC charge or in her complaint when she was officially terminated from the FDNY or on what grounds.

*v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir. 2007).

When assessing the sufficiency of a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 678-79 (citation omitted); *see also Twombly,* 550 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. *Iqbal,* 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

A complaint alleging employment discrimination need not establish a *prima facie* case to survive a motion to dismiss. The claims, however, must be facially plausible and must give fair notice to the defendants of the basis for the claim. *Romaine v. New York City Coll. of Tech. of the City Univ. of New York*, No. 10-CV-431, 2012 WL 1980371, at *2 (E.D.N.Y. June 1, 2012) (citing *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Thus, the elements of a *prima facie* discrimination claim are relevant to the determination of whether a complaint provides a defendant with fair notice and contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Romaine*, 2012 WL 1980371, at *2.

The court is mindful that in reviewing any submissions by a *pro se* litigant, any "document filed *pro se* is 'to be liberally construed,' and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**B. Application**

1. Adverse Employment Actions

The court will first address whether plaintiff was subject to an adverse employment action, because plaintiff's complaint alleging Title VII discrimination, ADA discrimination, and retaliation fails to allege that the plaintiff suffered discriminatory disparate treatment based on her protective status, a failure to accommodate her disability, or a specific adverse employment action regarding her retaliation claim. Accordingly, the complaint must be dismissed for failure to

state a claim. *Almontaser v. New York City Dep't of Educ.*, No. 13-CV-5621, 2014 WL 3110019, at *3 (E.D.N.Y. July 8, 2014) (citing *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.,* 483 F. App'x 660, 662 (2d Cir. 2012)).

A plaintiff suffers an adverse employment action when she experiences a "materially adverse change in the terms and conditions of employment." *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010); *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). An "adverse employment action" is one which is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citing *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000)). Indeed, "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII. *La Grande*, 370 F. App'x at 211. Examples of materially adverse employment actions may include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.*

*Burlington Northern & Santa Fe Railroad Co. v. White* expanded the definition of "materially adverse employment

action" for purposes of Title VII retaliation claims to require
that a plaintiff show only "that a reasonable employee would
have found the challenged action materially adverse, which in
this context means it well might have dissuaded a reasonable
worker from making or supporting a charge of discrimination."
*Burlington Northern & Santa Fe Railroad Co. v. White,* 548 U.S.
53, 68 (2006).

Plaintiff alleges the following "adverse employment
actions" in her Complaint: (1) her LODI status and benefits were
delayed until her surgery in January 2013; (2) after she was
eventually granted LODI status, it was terminated in
approximately April 2013 upon her failure to appear at two BHS
hearings; and (3) she was taken off her payroll. (*See generally*
Compl.)

Courts in this circuit have found that a delay in the
administrative processing of benefits does not generally
constitute an adverse employment action. *See, e.g., Malcolm v.
Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660, 662 (2d
Cir. 2012) ("Any alleged delays attributable to [defendant] in
processing [plaintiff's] COBRA benefits were immaterial because
such delays would not deter a reasonable worker in the
plaintiff's position from exercising [her] legal rights.");
*Joseph v. Leavitt*, 465 F.3d 87, 92 (2d Cir. 2006) (delay of four
months before plaintiff's employment was reinstated was not so

unreasonable as to constitute an adverse employment action);
*Castro v. City of New York*, 24 F. Supp. 3d 250, 263 (E.D.N.Y.
2014) (noting that delay in compensation, where such a delay is
merely an inconvenience, is insufficient to constitute an
adverse employment action); *Carter v. Potter*, No. 06-CV-3854,
2008 WL 1848639, at *4 (E.D.N.Y. Apr. 23, 2008) (finding that
delay of "several months" in processing worker's compensation
did not rise to the level of an "adverse employment action");
*Williams v. New York City Hous. Auth.*, No. 03-CV-7764, 2008 WL
2695139, at *3 (S.D.N.Y. June 29, 2008) *aff'd,* 361 F. App'x 220
(2d Cir. 2010) ("A delay in processing paperwork that does not
materially change the terms and conditions of a plaintiff's
employment is not an adverse employment action."); *Evans v. City
of New York,* 2003 WL 22339468, *10-11 (S.D.N.Y. Oct. 9, 2003)
(eleven-month delay in processing salary increase is not an
adverse employment action); *Badrinauth v. Touro College,* No. 97-
CV-3554, 1999 WL 1288956, at *6 (E.D.N.Y. Nov. 4, 1999) ("A
[four month] delay in the receipt of a paycheck is not an
adverse employment action.").

However, when a delay is of such length that it rises
to "more than a mere inconvenience," it may constitute an
adverse employment action. *Miller v. N.Y. City Health & Hosp.
Corp.,* No. 00-CV-140, 2005 WL 2022016, at *6 (S.D.N.Y. Aug. 22,
2005) (noting that a four-year delay in processing *might* qualify

33

as an adverse employment action, despite finding that delay did not constitute adverse employment action because plaintiff's own errors contributed to delayed payment); *Carter v. Potter*, No. 06-CV-3854, 2008 WL 1848639, at *4 (E.D.N.Y. Apr. 23, 2008) (noting that delay of over a year due to defendant's challenges to worker's compensation may rise to level of adverse employment action, but ultimately dismissing claim because plaintiff failed to produce evidence that defendant challenged his compensation in bad faith).

Plaintiff alleges that the award of her LODI status and benefits was delayed more than a year. (Compl. at 14.) She asserts that the "repeated denial of such necessary accommodation for over a year caused [her] hand injuries to become more and more severe, as surgeries would not have been required had [she] been granted LODI status." (Compl. at 14.) Although the delay of more than a year may rise to "more than a mere inconvenience," plaintiff does not allege any negative impact on her employment or that the delay materially changed the terms and conditions of her employment. *Joseph*, 465 F.3d at 92 (finding that administrative leave did not alter terms and conditions of plaintiff's employment sufficient to qualify as adverse employment action); *Gentile v. Potter*, 509 F. Supp. 2d 221, 240 n.10 (E.D.N.Y. 2007) (delay of injury compensation claims did not constitute an adverse employment action).

In the context of a retaliation claim, however, plaintiff has made a plausible showing that the delay in her receipt of benefits could dissuade a reasonable worker from making or supporting a charge of discrimination. *Birkholz v. City of New York*, No. 10-CV-4719, 2012 WL 580522, at *9 (E.D.N.Y. Feb. 22, 2012) (delay in medical leave benefits was sufficient to plead adverse employment action in retaliation claim where plaintiff alleged that disruption in benefits caused him "significant" financial injury and a material loss which could have dissuaded a reasonable worker from making a charge of discrimination). Although plaintiff does not make any factual allegations with regard to the impact, if any, that the delay in her LODI status had on the terms of her employment, she has suffered a "material loss" by her allegedly exacerbated physical injuries, which have resulted in her inability to continue working. Thus, it is plausible that such a delay in benefits, which prevented plaintiff from seeking prompt medical attention, could potentially dissuade a reasonable worker from making a charge of discrimination.

The termination of plaintiff's LODI status and benefits occurred in approximately April 2013, after she failed to appear at two BHS appearances and after she received a Notice of Violation. (Compl. at 15.) The termination of benefits qualifies as an adverse employment action where termination

results in an injury or harm.  *Beyer v. Cnty. of Nassau*, 524

F.3d 160, 163 (2d Cir. 2008); *Messer v. Bd. of Educ. of City of

New York*, No. 01-CV-6129, 2007 WL 136027, at *13 (E.D.N.Y. Jan.

16, 2007) (finding termination of health benefits did not

constitute an adverse employment action because benefits were

reinstated and applied retroactively).  Here, because there is

no indication that the LODI benefits were reinstated, the

termination of benefits as alleged constitutes an adverse

employment action.

Finally, "there is no question . . . that [employment]

termination is an adverse employment action." *Sista v. CDC Ixis

N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006).  Plaintiff

alleges that she was taken off payroll in April 2013 and

"terminated without due process."[9]  Accordingly, plaintiff has

---

[9] Defendant argues that plaintiff's September 2013 termination pursuant to New York Civil Service Law § 71 cannot constitute an adverse employment action as a matter of law.  Defendant is correct that, courts in the Second Circuit have found that no presumption of discrimination arises when an employer makes a termination decision pursuant to the New York Civil Service law. *Morris v. Town of Islip*, No. 12-CV-2984, 2014 WL 4700227, at *15 (E.D.N.Y. Sept. 22, 2014) (termination pursuant to C.S.L. § 71 "is a legitimate, non-discriminatory basis for the termination"); *Meyer v. William Floyd Union Free Sch. Dist.*, No. 07-CV-2524, 2008 WL 4415271, at *6 (E.D.N.Y. Sept. 24, 2008) (dismissing wrongful termination claims under Title VII and ADA where termination was pursuant to C.S.L. § 71); *Bresloff-Hernandez v. Horn,* No. 05-CV-0384, 2007 WL 2789500, at *6 (S.D.N.Y. Sept. 21, 2007) ("No presumption of discrimination arises when an employer makes a decision explicitly provided for by the Civil Service Law."); *Hatter v. Fulton,* No. 92-CV-6065, 1997 WL 411623, at *7 (S.D.N.Y. July 21, 1997), *aff'd sub nom., *207 *Hatter v. New York City Hous. Auth.,* 165 F.3d 14 (2d Cir. 1998) (finding termination pursuant to § 71 to be a valid, non-discriminatory reason for termination). However, plaintiff only alleges in her Complaint that she was removed from the payroll in April 2013 and that she was terminated without due process. There is no allegation that plaintiff was terminated pursuant to C.S.L. § 71 in the pleadings; rather, this information is sourced from documents outside of the record, namely, plaintiff's Article 78 proceeding in New York State

plausibly pleaded an adverse employment action to the extent

plaintiff alleges termination of her employment in her claims.

### 2. Title VII Discrimination Claim

Under Title VII, an employer or potential employer may

not "discriminate against any individual . . . because of such

individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e–2(a)(1).  To establish a *prima facie* case for

sex discrimination under Title VII, plaintiff must show that (1)

she is a member of a protected class, (2) she was qualified for

the position, (3) she suffered an adverse employment action, and

(4) such adverse employment action occurred under circumstances

giving rise to an inference of discrimination.  *Littlejohn v.*

*City of New York*, No. 14-1395-CV, 2015 WL 4604250, at *4 (2d

Cir. Aug. 3, 2015); *Leibowitz v. Cornell Univ.,* 584 F.3d 487,

498 (2d Cir. 2009); *Figueroa v. RSquared NY, Inc.*, No. 14-CV-

4390, 2015 WL 897117, at *2 (E.D.N.Y. Mar. 3, 2015).  Plaintiff

need only present "some minimal evidence suggesting that the

employer acted with discriminatory motivation."  *Littlejohn*, No.

14-CV-1395, 2015 WL 4604250, at *4 (2d Cir. Aug. 3, 2015).

---

Court.  Although the court may take judicial notice of such documents outside
the record, such as public records in other court proceedings, "it may do so
on a motion to dismiss only to establish the existence of the opinion, not
for the truth of the facts asserted in the opinion."  *Global Network
Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  As
such, although the court may consider that plaintiff has commenced an action
in New York State Supreme Court, it may not consider information stemming
from those pleadings that plaintiff was terminated in September 2013 pursuant
to C.S.L. § 71.

"[A] discrimination complaint need not allege facts
establishing each element of a prima facie case of
discrimination to survive a motion to dismiss," but it must
nevertheless comply with the plausibility standard set forth in
*Twombly* and *Iqbal*. *Chung v. City Univ. of New York*, No. 14-
3611-CV, 2015 WL 1428192, at *1 (2d Cir. Mar. 31, 2015) (citing
*E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d
Cir. 2014)) (internal citations omitted); *see Williams v. New
York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006). Thus,
Title VII discrimination claims which fail plausibly to allege
that the plaintiff suffered an adverse employment action are
subject to dismissal. *Chung*, 2015 WL 1428192, at *2-3; *Raeburn
v. Dep't of Hous. Pres. & Dev. of the City of New York*, No. 10-
CV-4818, 2015 WL 4016743, at *11 (E.D.N.Y. June 24, 2015).

Applying that standard here, plaintiff's Title VII
discrimination claim fails as a matter of law. Plaintiff
alleges that because of her sex, defendant delayed the approval
of plaintiff's LODI status and benefits, terminated her LODI
status and benefits, and terminated her employment at FDNY.
Plaintiff has met the first three requirements of the *prima
facie* case required under Title VII – she is a member of a
protected class, she is qualified for the job, which the court
will assume for the purpose of this opinion, and that she
suffered an adverse employment action with respect to her

termination from the FDNY.  Absent from plaintiff's Complaint, however, are factual allegations that permit the court to draw a plausible inference that plaintiff's sex was the basis for any alleged adverse employment actions.  *Iqbal,* 556 U.S. at 678.

Although plaintiff is not required to allege specifically every element of a *prima facie* case of discrimination, she is still required to "plead any facts that would create an inference that any adverse action taken by . . . defendant was based upon [her] gender."  *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Leibovitz v. N.Y. City Transit Auth.,* 252 F.3d 179, 189 (2d Cir. 2001) ("The *sine qua non* of a gender-based discriminatory action claim under Title VII is that the discrimination must be because *of* sex."); *Algarin v. City of New York*, No. 12-CV-1264, 2012 WL 4814988, at *2 (S.D.N.Y. Oct. 10, 2012) (internal quotation marks and citation omitted) (dismissing discrimination claim where complaint was "silent as to any discriminatory purpose or motivation directed toward the Plaintiff.").  Plaintiff may not rely on the simple fact that she is female and part of a protected class to raise a triable case of sex discrimination for the defendant's delay and denial of LODI benefits and plaintiff's subsequent termination from the FDNY.  *See, e.g., Castro v. City of New York*, No. 05-CV-593, 2009 WL 2223037, at *8 (S.D.N.Y. July 22, 2009) ("Although [plaintiff] is

indisputably Hispanic, he cannot simply join this fact to the defendants' denial of a job and leverage these two circumstances into a triable case of discrimination based on his Hispanic heritage."); *Martin v. MTA Bridges & Tunnels,* 610 F. Supp. 2d 238, 250 (S.D.N.Y. 2009) ("[A] plaintiff must do more than state that she is a member of a protected class who suffered an adverse employment action.").

Even liberally construed, the Complaint asserts only conclusions and labels with respect to defendant's alleged sex discrimination and provides no further factual matter that would render plaintiff's Title VII claim plausible.  Indeed, it appears that plaintiff merely checked the box for gender discrimination on her *pro se* form Complaint and made conclusory allegations in her EEOC charge that she suffered "gender discrimination, retaliation, and hostile work environment discrimination."  (Compl. at 11, 15.)  Thus, the court finds that plaintiff has failed to set forth any facts allowing the court to plausibly infer that any employment actions, adverse or otherwise, were motivated by her gender.  Accordingly, plaintiff's claim for Title VII discrimination on the basis of sex is dismissed for failure to state a plausible claim for which relief may be granted.

3.  <u>ADA Disability Discrimination Claim</u>

Title I of the ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A *prima facie* case of discrimination pursuant to the ADA requires a showing that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.  *Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir. 2008); *Vale v. Great Neck Water Pollution Control Dist*., No. 14-CV-4229, 2015 WL 248603, at *4 (E.D.N.Y. Jan. 20, 2015).

Similar to a Title VII claim, these prima facie elements for a disability claim merely "provide an outline of what is necessary to render a plaintiff's employment discrimination claims [on the basis of disability] for relief plausible."  *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *10 (S.D.N.Y. Dec. 10, 2014) (internal citation omitted).  A plaintiff alleging employment

discrimination pursuant to the ADA "is not required to set forth specific facts that establish each and every element of a *prima facie* case of discrimination." *Bakeer v. Nippon Cargo Airlines, Co.,* No. 09-CV-3374, 2011 WL 3625103, at *22 (E.D.N.Y. July 25, 2011), *adopted by* 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011); *Davis v. NYC Dep't of Educ.*, No. 10-CV-3812, 2012 WL 139255, at *4 (E.D.N.Y. Jan. 18, 2012); *see also Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515 (2002).

Applying the elements and pleading standards here, plaintiff's complaint also fails to state a plausible ADA discrimination claim.  First, with regard to whether she is "disabled within the meaning of the ADA," plaintiff only makes conclusory allegations that "medical records from [her] own doctors reveal that [she is] totally disabled, cannot drive and cannot take public transportation" leaving the court to surmise a disability based on her description of the March 2011 or December 2011 workplace injuries, her diagnosis of "upper extremity tendonitis," and the multiple hand surgeries she underwent.  (Compl. at 11, 14.)  The ADA Amendment Act of 2008 ("ADAAA") defines "disability" as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Indeed, plaintiff does not allege any facts for the court to determine whether she is disabled within the meaning of the ADA. Although plaintiff arguably identifies her alleged disability as "severe tendonitis" and other unspecified injuries to her upper extremities, she does not explain what "major life activity" is "substantially limited." *Capobianco,* 422 F.3d at 57. Without any factual specificity as to the alleged disability claimed and the major life activities affected, the Complaint fails to plead that plaintiff was disabled. *Broderick v. Research Found. of State Univ. of New York*, No. 10-CV-3612, 2010 WL 3173832, at *2 (E.D.N.Y. Aug. 11, 2010); *see Emmons v. City Univ. of New York,* No. 09-CV-537, 2010 WL 2246413, *7-8 (E.D.N.Y. June 2, 2010) (plaintiff failed to plead disability because complaint did not properly "allege any substantial physical limitations").

The fact that plaintiff cannot drive or use public transportation does not render her disabled, as courts in the Second Circuit have found that driving and commuting to work are not a major life activities. *See, e.g., Dorgan v. Suffolk Cnty. Cmty. Coll.*, No. 12-CV-0330, 2014 WL 3858395, at *6 n.12 (E.D.N.Y. Aug. 4, 2014) (noting that driving does not constitute a major life activity as contemplated by the ADA); *Stamm v. New York City Transit Auth.*, No. 04-CV-2163, 2011 WL 1315935, at *17 (E.D.N.Y. Mar. 30, 2011) (finding that travel and commuting are

not major life activities); *White v. Sears*, Roebuck & Co., No. 07-CV-4286, 2009 WL 1140434, at *7 (E.D.N.Y. Apr. 27, 2009) ("[D]riving is not a 'major life activity' as contemplated by the ADA"); *Darcy v. Lippman,* No. 03-CV-6898, 2008 WL 629999, at *15 (S.D.N.Y. Mar. 10, 2008) (commuting to work is not a major life activity); *see also Montesano v. Principi*, 47 F. App'x 608, 609 (2d Cir. 2002) (finding that the "ability to commute long distances to work on a daily basis is not one of the major life activities within the definition of the Rehabilitation Act.") (internal quotation marks and citation omitted).

Plaintiff also has not alleged any facts that she has a record of a disability or that she was regarded as having a disability within the meaning of the ADA. To the extent plaintiff relies on the fact that she received LODI benefits or worker's compensation, these records do not establish the existence of a disability under the ADA. *Schapiro v. New York City Dep't of Health*, 25 F. App'x 57, 61 (2d Cir. 2001) (noting that although worker's compensation findings may constitute a record of impairment, they do not establish that the impairment created a substantial limitation to qualify as a disability under the ADA); *Verdi v. Potter*, No. 08-CV-2687, 2010 WL 502959, at *6 (E.D.N.Y. Feb. 9, 2010) (dismissing ADA claim finding that worker's compensation decision was not sufficient to constitute a record of disability).

Moreover, even assuming that plaintiff could meet the first prong of "disabled under the meaning of the law," plaintiff does not allege any facts to establish whether she is "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation." *Vale*, 2015 WL 248603, at *4. "Essential functions" are defined under EEOC regulations to mean the "'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (citing 29 C.F.R. § 1630.2(n)(1) (1996)) (internal citation omitted); *Hernandez v. Int'l Shoppes, LLC*, No. 13-CV-6615, 2015 WL 1858997, at *24 (E.D.N.Y. Apr. 23, 2015) ("Essential functions are defined under EEOC regulations to mean the fundamental duties to be performed in the position in question, but not functions that are merely marginal.").

Other than alleging that she had never failed a CPR exam, and that she had 12 years of experience, plaintiff has not set forth any factual allegations regarding her current fitness to perform her job or whether she has requested and was denied a "reasonable accommodation." In any event, even if defendant had failed to provide a reasonable accommodation, such failure would not be an automatic basis of recovery. *See Hernandez*, 2015 WL 1858997, at *29 (noting that defendant's alleged failure to engage in process to provide reasonable accommodation is not a

basis for recovery where accommodation would eliminate
plaintiff's essential functions).  Indeed, the facts alleged
demonstrate that plaintiff was *not* otherwise qualified to
perform the essential functions of her job, as she alleges she
was "totally disabled," that she was unable to complete the CPR
testing required to return to work, and that she was unable to
drive or take transportation to travel to work.  "Courts have
consistently ruled that an employee cannot be considered
otherwise qualified when she is unable to report to work at the
time required, because she is not able to perform the essential
functions of her job."  *Lewis v. New York City Police Dep't,* 908
F. Supp. 2d 313, 327 (E.D.N.Y. 2012), *aff'd sub nom. Lewis v.
NYC Police Dep't,* 537 F. App'x 11 (2d Cir. Nov. 1, 2013)
(internal quotation marks and citation omitted); *see also
Rinaldi v. Quality King Distributors, Inc.*, 29 F. Supp. 3d 218,
227 (E.D.N.Y. 2014) (dismissing ADA claim where plaintiff could
not demonstrate that she could perform an "essential function"
of her employment, namely "showing up for work"); *Dorgan v.
Suffolk Cnty. Cmty. Coll.*, No. 12-CV-0330, 2014 WL 3858395, at
*7 (E.D.N.Y. Aug. 4, 2014) (dismissing ADA claim where
plaintiff's failure to report to work in three years
demonstrated that she was unable to perform the essential
functions of her job under the ADA).  Indeed, courts have
specifically noted that "[t]he ADA does not require employers to

46

tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." *Lewis,* 908 F. Supp. 2d 313, 327 (quoting *Mescall v. Marra,* 49 F. Supp. 2d 365, 374 n. 18 (S.D.N.Y. 1999)); *Castellano v. City of New York,* 946 F. Supp. 249, 253 (S.D.N.Y. 1996) ("[A]an individual who is totally disabled — that is, unable to perform the essential job functions even with reasonable accommodation — is not entitled to relief under [the ADA]").  Thus, plaintiff does not plausibly allege facts to meet the third prong that she is "otherwise qualified to perform the essential functions of the job."

Furthermore, as with her Title VII claim, plaintiff fails to allege any facts to plausibly suggest that any employment actions – adverse or otherwise – were based on her alleged disability.  *Heckman v. Town of Hempstead*, 568 F. App'x 41, 45 (2d Cir. 2014) (affirming dismissal where plaintiff's allegations did not suggest a plausible inference that any of the defendants intentionally discriminated against him on the basis of his disability).  Accordingly, plaintiff's claim for discrimination on the basis of her alleged disability is dismissed for failure to state a plausible claim for which relief may be granted.

4.  <u>Retaliation Claims</u>

To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) she engaged in protected

47

activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citing *Lore v. City of Syracuse,* 670 F.3d 127, 157 (2d Cir. 2012)); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (ADA).

Plaintiff alleges that defendant's alleged acts discussed previously in this opinion in relation to her discrimination claims, along with a number of other incidents, were done in retaliation of her 2011 lawsuit and complaints to the EEOC and FDNY EEO, assuming for purposes of this motion that she made such complaints. Specifically, plaintiff alleges that the delay of LODI status until January 2013 was "part of an ongoing retaliation by [FDNY] stemming from [her] 2011 lawsuit" and that termination of her LODI benefits in December 2011, and ultimately termination of her employment in April 2013, were actions also taken in retaliation of her 2011 federal lawsuit, her complaints to the FDNY EEO about her supervisors in June 2012, and her charges to the EEOC, filed in connection to her 2011 lawsuit.[10] (Compl. at 11.) Moreover, plaintiff alleges

---

[10] Although defendant argues that "plaintiff's only mention of retaliatory conduct predates the unknown and alleged unconsented filing of plaintiff's EEOC Charge of Discrimination on or about June 13, 2013," (Def. Mem. at 20),

that she has suffered "even more hostility and retaliation" since her July 2012 settlement.

Plaintiff's engagement in a federal lawsuit and her complaints to the EEOC and FDNY EEO constitute a "protected activity," however, plaintiff's retaliation claim fares no better than her other ADA claims: the Complaint is bereft of factual allegations that give rise to a reasonable inference that the FDNY retaliated against plaintiff for engaging in a protected activity.

Assuming that plaintiff is able to plausibly allege an adverse employment action, plaintiff fails to plead sufficient factual allegations to establish a plausible causal nexus between the adverse employment actions and her protected activity. *See Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 413 (S.D.N.Y. 2012) (dismissing retaliation claims where there was "nothing to connect [plaintiff's] complaint . . . and the self-described retaliatory actions aside from the fact that plaintiff groups these actions underneath the heading of 'retaliation' in his [pleadings]"). Causation may be shown:

---

the court understands plaintiff to be referencing the EEOC charge filed in connection with her 2011 lawsuit, and not the instant action, as these allegations of retaliation were made in her June 17, 2013 EEOC Charge. To the extent any retaliatory conduct occurred after the charge, it was not alleged in the Complaint. Thus, no retaliatory animus may be inferred from plaintiff's June 17, 2013 EEOC charge, which post-dates any adverse employment actions alleged. *See Pinero v. Long Island State Veterans Home,* 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity.").

"(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Freeman v. Dep't of Envtl. Prot.*, No. 10-CV-1555, 2013 WL 817221, at *10 (E.D.N.Y. Feb. 5, 2013) *report and recommendation adopted,* 2013 WL 801684 (E.D.N.Y. Mar. 5, 2013).

Here, plaintiff offers only speculation connecting the protected activity with the retaliatory acts and only makes conclusory allegations that the "denial of benefits and insurance was retaliatory, due to [her] prior complaints to the EEO" and that "denial of LODI status was part of an ongoing retaliation by [defendants] stemming from [her] 2011 lawsuit." (Compl. at 14.)  Simply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss. *Edwards v. Elmhurst Hosp. Ctr.*, No. 11-CV-5348, 2013 WL 839554, at *6 (E.D.N.Y. Feb. 4, 2013) *report and recommendation adopted*, 2013 WL 831162 (E.D.N.Y. Mar. 6, 2013) (dismissing retaliation claim where plaintiff "fail[ed] to include any allegations whatsoever to infer a causal nexus between his complaints of

discrimination and the alleged adverse action"); *Mandavia v. Columbia Univ.,* No. 12-CV-2188, 2012 WL 6186828, at *13 (S.D.N.Y.  Dec. 12, 2012) (granting motion to dismiss where plaintiff did not allege any specific facts that could give rise to a plausible inference that defendant's motive was retaliatory, and only suggesting that the court should infer retaliatory motive because defendant's adverse action occurred later in time than his EEOC complaint).

Moreover, the temporal connection is too attenuated to establish causation.  Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos,* 252 F.3d at 554, district courts within the Second Circuit "have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Beaumont v. Cablevision Sys. Corp.*, No. 10-CV-3585, 2012 WL 1158802, at *6 (E.D.N.Y. Apr. 9, 2012) (citing *Garrett v. Garden City Hotel, Inc.,* No. 05-CV-0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007)) (collecting cases); *see Tuccio Dev., Inc. v. Miller*, 423 F. App'x 26 (2d Cir. 2011) (finding two-month gap between protected activity and alleged adverse action was too distant to support retaliatory motive where no additional evidence was introduced); *Murray v. Town of N.*

*Hempstead*, 853 F. Supp. 2d 247, 273 (E.D.N.Y. 2012) (finding three-month gap too attenuated where no other facts were alleged).

Here, plaintiff engaged in the first "protected activity" – the filing of her EEOC charges and prior federal lawsuit - on June 8, 2011. Plaintiff alleges that the retaliatory conduct – namely her delay of LODI benefits and Samuel's intentional abandonment when she fell – occurred in December 2011, approximately six months after the 2011 complaint was filed.[11]  (Compl. at 14-15.)  In addition to being too temporally attenuated to infer a causal connection, these claims are barred by the General Release and Statute of Limitations, as they occurred prior to August 21, 2012.

Plaintiff further alleges that she engaged in protected activity when she complained to the FDNY EEO on June 19, 2012, regarding "Captain Knight's discrimination" and "Samuel's abandonment."  (Compl. 14.)  Plaintiff alleges that her LODI benefits were not granted until the day before her surgery in January 2013, and that the "repeated denial" and year-long delay in her receipt of benefits was done in retaliation for her filing the 2011 federal lawsuit.  (Compl. at 14.)  First, with respect to the delay in awarding LODI status, the delay began in December 2011 when plaintiff initially

_____

[11] Plaintiff's termination occurred in April 2013, and is even more temporally attenuated from the 2011 protected activity.

applied for LODI status and benefits, and any retaliatory delay claimed prior to plaintiff's July 13, 2012 Settlement Agreement and General Release is barred. Moreover, even absent the bar, the "protected activity" regarding plaintiff's June 19, 2012 EEO FDNY complaint regarding Captain Knight occurred *after* the alleged adverse employment action began in December 2011 and no retaliatory animus may be inferred. *Pinero v. Long Island State Veterans Home,* 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity.").

Second, plaintiff alleges that her LODI benefits were terminated and she was removed from the payroll in April 2013, approximately 10 months after her complaints to the FDNY EEO, and nearly two years after her 2011 federal lawsuit. (Compl. at 15.) Thus, in this case, without additional evidence to support causation, the nearly yearlong gap between the two events far exceeds the normal span of time from which causality may be inferred. *Tuccio Dev., Inc. v. Miller*, 423 F. App'x 26 (2d Cir. 2011) (finding two-month gap between protected activity and alleged adverse action was too distant to support retaliatory motive where no additional evidence was introduced); *Hunt*, 2012 WL 7658364, at *7 (finding one-year gap too attenuated to support inference of causation); *Murray*, 853 F.

Supp. 2d at 273 (finding three-month gap too attenuated where no other facts were alleged).

Thus, because plaintiff alleges no facts to suggest a plausible causal nexus between her protected activity and the alleged adverse employment actions, plaintiff's retaliation claims are dismissed for failure to state a claim upon which relief may be granted.

### 5. Hostile Work Environment Claims

To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex [or disability]." [12] *Patane*, 508

---

[12] The courts notes that the Second Circuit has not yet decided whether the ADA provides a basis for a hostile work environment claim. *Robinson v. Dibble*, No. 13-CV-976, 2015 WL 3372190, at *2 n2 (2d Cir. May 26, 2015)(noting that the Second Circuit has not yet decided whether a hostile work environment claim is cognizable under the ADA); *Margherita v. FedEx Exp.,* 511 F. App'x 71, 73 (2d Cir. 2013) (summary order) (same); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 n.2 (2d Cir. 2014); *Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 358 (E.D.N.Y. 2013). Many district courts, however, have assumed without deciding that a claim for hostile work environment can be brought under the ADA and analyzed the claim using standards borrowed from Title VII caselaw. *See, e.g.*, *Castro*, 24 F. Supp. 3d at 271; *Fossesigurani v. City of Bridgeport Fire Dep't,* No. 11-CV-752, 2012 WL 4512772, at *7 (D. Conn. Oct. 1, 2012); *Lupe v. Shinseki,* No. 10-CV-198, 2012 WL 3685954, at *20 (N.D.N.Y. Aug. 24, 2012). In any event, because plaintiff has brought her claims under both Title VII and the ADA, the hostile work environment claim may proceed and the court will analyze the claim under Title VII standards.

F.3d 106, 113; *see Hussey v. New York State Dep't of Law/Office of Atty. Gen.*, 933 F. Supp. 2d 399, 412 (E.D.N.Y. 2013)(citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 17 (1993)) (Title VII hostile work environment claims arise "when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatory hostile or abusive working environment."). Plaintiff's complaint need not establish a *prima facie* case of hostile work environment at this stage but "only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

Conduct permeating a workplace that qualifies as a hostile work environment lies between that which is merely offensive and conduct or behavior which causes a tangible psychological injury. *Harris,* 510 U.S. at 21; *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 145 (E.D.N.Y. 2013). "The misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Terry,* 336 F.3d at 148 (quoting *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002). Factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Terry,* 336 F.3d at 148 (quotation marks omitted). The Second Circuit has also noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of conduct that is "more than episodic" and "continuous and concerted," "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Feingold v. New York,* 366 F.3d 138, 150 (2d Cir. 2004) (internal quotations marks and citations omitted).

The Complaint does not allege facts to suggest that defendant or any its employees subjected plaintiff to an environment that a reasonable person would find hostile or abusive.[13]  Indeed, the only specific instance of conduct alleged

---

[13] Defendant also argues in its motion to dismiss that "[p]laintiff cannot allege a hostile work environment when plaintiff was no longer working in any FDNY facilities or responding to calls on behalf of FDNY." (Def. Mem. at 22.)  Indeed, plaintiff may not allege violations during a period in which she was not employed by or working for defendant. *See Meyer v. New York Office of Mental Health*, No. 12-CV-6202, 2014 WL 1767818, at *6 (E.D.N.Y. May 2, 2014) (dismissing hostile work environment claim where plaintiff alleged "continuing violation" because plaintiff had been terminated prior to the period alleged.); *Gillman v. Inner City Broad. Corp.*, No. 08-CV-8909, 2011 WL 181732, at *1 (S.D.N.Y. Jan. 18, 2011) (dismissing hostile work environment claim where there was no dispute that the alleged incidents occurred while plaintiff was on leave and did not take place in the "workplace"); *Akinfaderin v. W.P. Carey & Co. LLC*, No. 11-CV-3184, 2011 WL 6961403, at *4 (S.D.N.Y. Dec. 28, 2011) *on reconsideration in part,* No. 11-CV-3184 LBS, 2012 WL 432647 (S.D.N.Y. Feb. 10, 2012) (dismissing state hostile work environment

to create a hostile work environment relates to an incident in
which plaintiff alleges her "relationship with [her]
friend/coworker . . . deteriorated, as the later began fighting
with me for complaining . . . which in turn created an even more
hostile work environment." (Compl. at 13.) Plaintiff also
alleges that "several coworkers stopped talking [to her]."
(*Id.*) Such instances of coworker discord do not rise to the
level of a hostile work environment. Indeed, "Title VII does
not establish a 'general civility code' for the American
workplace," *La Grande*, 370 F. App'x at 210 (quoting *Petrosino v.
Bell Atl.,* 385 F.3d 210, 223 (2d Cir. 2004)), and "not every
unpleasant matter short of discharge or demotion constitutes an
adverse action under Title VII." *Gentile*, 509 F. Supp. 2d at
239 (citing *Delgado v. Triborough Bridge and Tunnel Auth.,* 485
F.Supp.2d 453, 461 (S.D.N.Y. 2007); *see also Burlington,* 126
S.Ct. at 2415 ("[N]ormal petty slights, minor annoyances, and
simple lack of good manners will not create such deterrence.")
(internal citations and quotations omitted)).

Other than conflicts with her colleagues, plaintiff
does not specify instances of defendant's conduct that allegedly
created a hostile work environment based on her sex or

claim where plaintiff never returned to workplace after going on medical
leave). Accordingly, in the amended complaint, plaintiff must indicate which
periods she was still working for defendant, and at which point she was on
medical leave or LODI status and employed, but not working for defendant, and
when she was ultimately terminated by defendant.

disability.  Instead, plaintiff only alleges in a conclusory manner that defendants "engaged in "hostile work environment discrimination" and that she suffered "disrespectful treatment, retaliation and harassment which has created . . . a hostile work environment" and that the conduct of her supervisors "is severe and pervasive, creating a hostile work environment that a reasonable person would consider intimidating, abusive and hostile."  (Compl. at 11, 15.)  Besides generally stating that her mistreatment was "severe and pervasive," plaintiff does not specify or describe the defendant's conduct, the level of severity, pervasiveness, or frequency of the alleged harassment or disrespectful treatment, nor does she allege that any mistreatment was on account of her gender or disability.  Nor does plaintiff allege or set forth any facts that defendant's acts or conduct "affected the terms and conditions of his employment" — an essential element of a hostile work environment claim.  *Vance*, 133 S. Ct. 2434, 2441 (2013) ("[P]laintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered."); *Almontaser v. New York City Dep't of Educ.*, No. 13-CV-5621, 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014).

Further, even construing all of the allegations as true and drawing inferences liberally and in favor of the pro se plaintiff, there is no factual basis upon which to conclude that

any of defendant's actions were taken *because* of plaintiff's

gender or disability. *See Kelly*, 716 F.3d at 14 (quoting

*Alfano,* 294 F.3d at 374) ("[I]t is axiomatic that in order to

establish a sex-based hostile work environment under Title VII,

a plaintiff must demonstrate that the conduct occurred because

of her sex."); *Lucio v. New York City Dep't of Educ.,* 575 F.

App'x 3, 5 (2d Cir. 2014) (affirming dismissal of hostile work

environment claim where complaint pleaded no facts "that would

allow a court to draw a reasonable inference that Lucio was

subjected to any mistreatment or adverse action *because of* her

race"); *Castro*, 24 F. Supp. 3d at 271 (dismissing hostile work

environment claims where there was no basis upon which to

conclude that the delay in compensation and the assignment of

physical tasks occurred *because* plaintiff was disabled).

Accordingly, plaintiff's hostile work environment claims are

dismissed for failure to plausibly state a claim upon which

relief may be granted.[14]

      6.   Plaintiffs' Due Process Claims

      Plaintiff alleges in her Complaint that she was

"terminated without due process."  (Compl. ¶ 4.)  The court

---

[14] Defendant also argues that plaintiff's hostile work environment claim must
be dismissed because plaintiff was on LODI status beginning in 2011, which
"means that plaintiff was being paid but was not appearing to work as an EMT
for FDNY."  (Def. Mem. at 22.)  It is unclear from the pleadings whether
plaintiff was continuing to work or was present at the FDNY facilities a
sufficient amount of time to suffer a hostile work environment.  Thus the
court will not reach the merits of defendant's argument on this issue.

liberally construes plaintiff's Complaint to allege a due
process claim pursuant to 42 U.S.C. § 1983 ("Section 1983").  In
order to state a valid claim under 42 U.S.C. § 1983, a plaintiff
must allege (1) that the challenged conduct was "committed by a
person acting under color of state law," and (2) that such
conduct "deprived [the plaintiff] of rights, privileges, or
immunities secured by the Constitution or laws of the United
States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)
(quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994));
*see Filarsky v. Delia,* -- U.S. --, 132 S.Ct. 1657, 1661 (2012).
Section 1983 "does not create a federal right or benefit; it
simply provides a mechanism for enforcing a right or benefit
established elsewhere."  *Morris-Hayes v. Bd. of Educ. of Chester
Union Free Sch. Dist.,* 423 F.3d 153, 159 (2d Cir. 2005) (citing
*Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985)).

Plaintiff alleges that she was terminated without due
process.  (Compl. ¶ 4.)  Where a plaintiff alleges violations of
procedural due process "the deprivation by state action of a
constitutionally protected interest in 'life, liberty, or
property' is not in itself unconstitutional; what is
unconstitutional is the deprivation of such an interest *without
due process of law*."  *Reed v. Medford Fire Dep't, Inc.*, 806 F.
Supp. 2d 594, 609 (E.D.N.Y. 2011) (citing *Zinermon v. Burch,* 494
U.S. 113, 125 (1990) (emphasis in original)).  Therefore, "[t]o

plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." *J.S. v. T'Kach,* 714 F.3d 99, 105 (2d Cir. 2013) (citing *Ahlers v. Rabinowitz,* 684 F.3d 53, 62 (2d Cir. 2012)). "[A] plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" *Id.* (quoting *Local 342 v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994)) (second alteration in original).

Assuming that plaintiff has a property right in her continued employment, *see Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002), she has not alleged that she was deprived of that right without due process. Other than indicating on the form complaint that she was "terminated without due process," plaintiff has alleged no facts regarding when she was terminated, how, and what process she was due but not provided. Indeed, plaintiff's due process claim fails to provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests[.]" *Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 09-CV-12, 2009 WL 3682458, at *9 (S.D.N.Y. Oct. 29, 2009).

Moreover, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard

prior to termination, so long as a full adversarial hearing is provided afterwards." *Munafo v. Metro. Transp. Auth.,* 285 F.3d 201, 212 (2d Cir. 2002).  Indeed, as the Second Circuit has recognized, "[t]his court has held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *Grillo v. New York City Transit Auth.,* 291 F.3d 231, 234 (2d Cir. 2002) (internal quotations and citation omitted); *O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, at *12 (E.D.N.Y. Sept. 5, 2012) (finding that procedure under Article 78 was "more than adequate" remedy with respect to plaintiff's claim that he was wrongfully terminated without due process); *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 99 (N.D.N.Y. 2013) (dismissing due process claim where Article 78 proceeding was available to plaintiff challenging her constructive discharge); *Monroe v. Schenectady Cnty.,* 1 F. Supp. 2d 168, 172 (N.D.N.Y. 1997), *aff'd* 152 F.3d 919 (2d Cir. 1998) ("It is well-established in this Circuit that a N.Y.C.P.L.R. Article 78 proceeding provides an adequate post-deprivation remedy where a plaintiff alleges he was coerced into surrendering an employment-based property or liberty interest.").

Thus, because New York law affords plaintiff a full adversarial hearing via an Article 78 proceeding in New York State Supreme Court to dispute her termination – and indeed, plaintiff has already filed such an action – plaintiff cannot show she has been deprived of due process. *See Tessler v. Paterson*, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011) (dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment and noting that "[p]laintiff must avail himself of these procedures before alleging a violation of procedural due process before [a federal] Court."); *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 345 (E.D.N.Y. 2009) ("The Second Circuit has held that an Article 78 proceeding under New York law affords sufficient post-deprivation constitutional process where pre-deprivation process is impracticable.") (citations omitted); *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 343 (E.D.N.Y. 2009) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 299 (1981)).

Plaintiff fails to state a due process claim with respect to her termination, and in any event, the due process claim fails as a matter of law. *O'Leary*, 2012 WL 3842567, at *13 (finding that because Article 78 was available to plaintiff to challenge his termination, due process claims could not be

asserted as a matter of law).  Accordingly, plaintiff's due process claim is dismissed.

### 7.  Plaintiff's New York City Human Rights Law Claims

Plaintiff also purports to bring her claims under the New York City Human Rights Law ("NYCHRL"), though she does not specify which claims she brings under the City law.  (Compl. ¶ 8.)  NYCHRL claims are no longer construed to be coextensive with their federal counterparts, and must be analyzed and considered separately from the federal claims.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 108-09 (2d Cir. 2013) (considering NYCHRL claims separately from Title VII claims in reversing summary judgment); *Dillon v. Ned Mgmt., Inc.*, No. 13-CV-2622, 2015 WL 427921, at *7 (E.D.N.Y. Feb. 2, 2015).  However, "at a minimum, employment discrimination claims [under the NYCHRL] must meet the standard of pleading set forth in *Twombly* and *Iqbal*."  *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 576 (S.D.N.Y. 2012) *aff'd,* 525 F. App'x 26 (2d Cir. 2013) (citing *Goodman v. Port Auth. of New York & New Jersey,* 850 F. Supp. 2d 363, 386 (S.D.N.Y. 2012)).  Indeed, like Title VII and the ADA, the "NYCHRL is not a general civility code . . . and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives, or if the defendant proves the conduct was nothing more than 'petty slights or

trivial inconveniences.'" *Mihalik*, 715 F.3d at 113 (citing
*Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 77-80, 872
N.Y.S.2d 27, 39-41 (2009)).  As discussed *infra,* plaintiff has
failed to allege plausible claims under each of her federal
claims, and does not allege a plausible discriminatory or
retaliatory motive based on gender or disability in any of her
claims.  Thus, because plaintiff is not able to plead a
plausible discriminatory or retaliatory motive, her NYCHRL
claims must be dismissed for failure to state a plausible claim
upon which relief may be granted.

## CONCLUSION

        For reasons set forth herein, plaintiff's Title VII,
ADA, and NYCHRL discrimination, retaliation, and hostile work
environment claims that pre-date August 21, 2012 are dismissed
with prejudice as time-barred or because they were included in
the Settlement Agreement dated July 13, 2012 in plaintiff's
prior federal lawsuit, and the remaining claims of
discrimination on the basis of sex and age, retaliation, hostile
work environment, and due process are dismissed without
prejudice for failure to state a claim.

        The court grants plaintiff fourteen (14) days to amend
her complaint with respect to her Title VII discrimination, ADA
discrimination, retaliation, and hostile work environment claim
in a manner consistent with this decision.  *See Chavis v.*

*Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991)) (A *pro se* complaint "should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.").  She may not replead claims that are barred by her prior July 13, 2012 settlement of her prior federal action and/or the statute of limitations prior to August 21, 2012.  Because the court has provided plaintiff ample opportunity to prosecute her claims, failure to comply with the court's order will result in dismissal of plaintiff's entire action with prejudice.

        Plaintiff is advised that an amended complaint does not simply add to the first complaint.  Once an amended complaint is filed, it completely replaces the original.  Therefore, it is important that plaintiff include in the amended complaint all the necessary information that was contained in the original complaint, except that she should not include claims pre-dating August 21, 2012, as those claims are barred by her Settlement Agreement, General Release, and the 300 day filing rule.  Moreover, plaintiff shall not include her termination without due process claims as that claim fails as a matter of law.  The amended complaint must be captioned as an "Amended Complaint," and bear the same docket number as this Order.  The Clerk of the Court is respectfully directed to serve

of a copy of this Order on plaintiff and note service on the docket by August 18, 2015.

**SO ORDERED.**

_____ \_\_\_/s/_____
**KIYO A. MATSUMOTO**
United States District Judge

Dated: Brooklyn, New York
August 14, 2015